IN RE APPLICATION OF HAMPTON.

[Cite as *In re Application of Hampton,* 99
Ohio St.3d 306, 2003-Ohio-3649.]

(No. 2002–1571—Submitted March 26, 2003—Decided July 23, 2003.)

**Per Curiam.**

{¶ 1} On November 16, 1998, applicant, Kevin M. Hampton of Hilliard, Ohio, filed an application to register as a candidate for admission to the practice of law. The Admissions Committee of relator, the Columbus Bar Association, originally tabled consideration of the applicant's application and then on June 23, 2000, recommended approval of the application. After receiving the J.D. degree, applicant filed an application to take the Ohio bar examination. The Board of Commissioners on Character and Fitness of the Supreme Court of Ohio decided to conduct a sua sponte investigation under Gov.Bar R. I(10)(B)(2)(e). On June 25, 2002, a panel of the board held a hearing in this matter. Applicant testified in his own behalf and presented three witnesses: his fiancée, his former roommate, and the executive director of the Ohio Lawyers Assistance Program ("OLAP"). The facts, as disclosed by the record, are as follows:

{¶ 2} Applicant disclosed on his 1998 application that he had been arrested on four occasions between 1988 and 1996 for operating a motor vehicle while under the influence of alcohol ("OMVI"). In one of these cases, applicant pled guilty to OMVI. The other three cases were disposed of with the dismissal of the OMVI charge after applicant pled guilty to reckless operation.

{¶ 3} Applicant admitted on his application that he "was abusing alcohol," and he checked "Yes" to Question 18(a) on the application, thereby indicating that he had been "dependent upon, addicted to, or an abuser of [a] chemical substance" within the previous four years. He further indicated that he had received alcohol counseling in 1995. He stated on the application that he had "matured" and was "not currently dependent [upon], addicted to, or abusing any chemical substance."

{¶ 4} Subsequently, two members of the Admissions Committee of relator interviewed applicant. On May 17, 1999, relator notified applicant that the interviewers were unable to give him an unqualified recommendation and that it would be necessary for him to submit to a second interview. On December 9, 1999, relator notified applicant that because of concerns about applicant's record of driving while under the influence of alcohol, it was unable to recommend his admission. Relator referred applicant to the Ohio Lawyers Assistance Program ("OLAP").

{¶ 5} On December 13, 1999, applicant contacted Scott Mote, the Executive Director of OLAP. Mote recommended that applicant go to Talbot Hall, the drug and alcohol addiction services program at Ohio State University Hospitals East, for an assessment of his condition. Applicant acted in accordance with this recommendation. Talbot Hall determined that there was a "high probability" that applicant was dependent on alcohol and recommended that applicant engage in an "intensive outpatient program."

{¶ 6} Because applicant's work schedule made it difficult for him to go regularly to Talbot Hall, applicant went instead to the Wellness Group, Inc., of Columbus. The Wellness Group counselor characterized applicant as "a prior alcohol abuser in remission." The counselor believed that applicant had his alcohol abuse "under control."

{¶ 7} Mote regarded this assessment as "unfortunat[e]." In his experience, an assessment of this nature in effect communicates to the patient the message that he can continue to drink. Mote warned applicant against this and expressed the view that the Wellness Group assessment was incorrect, based on the earlier assessment by Talbot Hall and on applicant's record of OMVI arrests. However, applicant continued to participate in the Wellness Group's counseling and educational program. Meanwhile, on May 20, 2001, Capital University Law School awarded applicant the degree of juris doctor.

{¶ 8} Applicant was arrested for OMVI on two more occasions subsequent to his meeting with Mote. After the first arrest, applicant pled guilty to OMVI. After the second, the OMVI charge was dismissed after applicant pled guilty to another charge. The second arrest took place on September 15, 2001. According to applicant, he has completely abstained from alcohol since that date.

{¶ 9} Mote did not hear from applicant again until October 26, 2001, when he received a call from the attorney who was representing applicant on his most recent OMVI charge, which was then pending. The attorney informed Mote that applicant was now enrolled in the intensive outpatient program at Talbot Hall.

{¶ 10} On November 6, 2001, applicant advised Mote that he had completed Talbot Hall's six-week intensive outpatient program, which consisted of three

three-hour sessions of intensive group and individual counseling per week. Mote recommended that applicant attend meetings of Alcoholics Anonymous ("AA").

{¶ 11} On December 4, 2001, applicant signed a two-year OLAP "recovery contract." The contract included clauses whereby applicant agreed to attend a minimum of three AA meetings per week, encourage his "spouse or significant other" to attend Alanon or Codependents Anonymous meetings, attend open meetings with his "spouse or significant other, if possible," and involve his family in continuing supportive care "as required by my monitor." Mote introduced applicant to a sponsor from AA and assigned an attorney who had participated in OLAP to act as applicant's monitor. Mote believed that by the end of December, applicant had finally accepted that he was an alcoholic and must give up drinking for the rest of his life.

{¶ 12} Applicant attended all required AA meetings through May 2002, except during February 2002. During that month, applicant became engaged to be married, and both his grandmothers were hospitalized, one with a fatal illness. During February 2002, applicant attended only half the AA meetings he had agreed to (i.e., six meetings instead of twelve). Mote warned him that he was thereby "putting [himself] at risk," and applicant subsequently resumed attendance at all required meetings.

{¶ 13} On March 20, 2002, applicant filed his application to take the July 2002 bar examination. On this application, applicant disclosed that he had been arrested twice for OMVI since filing his earlier application to register as a candidate for admission. After the filing of this application, the board scheduled a hearing for June 25, 2002, to consider applicant's case.

{¶ 14} At the hearing, Scott Mote testified on applicant's behalf. Mote was strongly convinced that applicant had accepted the fact that he is an alcoholic. This acceptance, according to Mote, is the first and most important step in the twelve-step AA program. Mote was impressed by applicant's "being willing and actively pursuing * * * recovery." Mote had also spoken with applicant's sponsor and OLAP monitor and testified that they were pleased with applicant's progress and cooperation. Mote concluded without reservation that applicant was qualified to practice law.

{¶ 15} According to Mote, applicant was in full compliance with his OLAP contract. However, as of the hearing date, applicant had not asked his fiancée to join any spousal support program, although she indicated at the hearing that she was willing to do so if applicant wanted her to.

{¶ 16} Applicant testified that he had not yet told his parents about his alcoholism. When asked why, applicant explained that he was performing the twelve steps of the AA program in order, and that informing his parents was part of the ninth step, which he had not reached yet. (Applicant had completed the

fifth step of the program by the time of the hearing.) Applicant further testified that he had begun "adapting [his] life around AA meetings" and that he attends approximately 15 meetings per month.

{¶ 17} The hearing panel issued its recommendation on July 12, 2002. A majority of the panel found that applicant had failed to prove, by clear and convincing evidence, that he possessed the requisite character and fitness to become licensed to practice law. The panel noted that applicant's recognition of his alcohol problem was recent. Applicant had completed only six months of his OLAP contract as of the hearing date and had been in full compliance only since March 2002, after missing half his required AA meetings in February of that year. The panel was also concerned because applicant had not informed his family that he is an alcoholic.

{¶ 18} The panel believed that applicant should demonstrate his freedom from alcohol abuse for a longer period of time before taking the bar examination. Thus, the panel recommended that applicant be permitted to take the July 2003 bar examination, provided that he demonstrate compliance with his OLAP contract and submit to another character and fitness interview and that "no adverse matter then exists."

{¶ 19} The full board issued its recommendation on September 10, 2002. The board's analysis of applicant's case largely conformed to that of the panel, and the board also found that applicant had failed to prove the requisite character and fitness. However, the board recommended that applicant not be permitted to take the bar examination until July 2004.

{¶ 20} Among the board's chief concerns was the fact that applicant had been arrested for OMVI on six occasions between 1988 and 2001. The board found that "six OMVIs for a 36 year old is indicative of an extensive, ongoing, continuous and uninterrupted problem," especially since the last two OMVI arrests were recent.

{¶ 21} The board also expressed concern because applicant had "presented no evidence of his current assessment or other progress in his treatment and recovery." The board dismissed Scott Mote's favorable evaluation of applicant's progress as coming from a witness who had "admitted he is not qualified to make assessments." The board was especially troubled by the fact that applicant did not adduce any direct testimony or other evidence from his monitor or sponsor.

{¶ 22} Applicant has filed objections to the board's findings and recommendations. Applicant stresses that he has been sober since September 15, 2001. He thus will have remained sober for nearly two and one-half years by the time of the February 2004 bar examination.

{¶ 23} We share the concerns expressed by the board and therefore deny applicant's current application. Although the evidence in the record is largely favorable toward applicant, more reliable and more current information regarding applicant's progress toward recovery will be needed before applicant can be deemed to possess the requisite character and fitness to practice law in Ohio. More specifically, what is needed is an evaluation by a qualified professional.

{¶ 24} Our concern, however, can be addressed by imposing a reporting requirement upon applicant. We therefore order that applicant be permitted to reapply for the February 2004 bar examination, provided that he submit two reports from a professional alcohol-recovery counselor stating that his recovery continues to progress. The first such report must be submitted to the Board of Commissioners on Character and Fitness by August 15, 2003, and the second by January 15, 2004.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, VALEN, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

ANTHONY VALEN, J., of the Twelfth Appellate District, sitting for COOK, J.

———

Bloomfield & Kempf, David Bloomfield and Mark M. Nesbit, for relator.

Kegler, Brown, Hill & Ritter and Geoffrey Stern, for applicant.